**Opinion filed April 30, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-11-00093-CV

_____

### VENTURE COTTON COOPERATIVE AND NOBLE AMERICAS CORP., Appellants
### V.
### SHELBY ALAN FREEMAN ET AL., Appellees

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause Nos. 11-02-16176 & 11-02-16184**

### O P I N I O N   O N   R E M A N D

This is a consolidated interlocutory appeal of the trial court's orders in which it denied Venture Cotton Cooperative's and Noble Americas Corp.'s motions to compel arbitration under the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16; TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2015). We reverse and remand.

Venture is a cotton cooperative-marketing association managed by Noble. Appellees are a group of twenty-eight cotton farmers who each contracted to sell cotton to Venture. In the trial court, there were two separate suits. Two farmers were plaintiffs in one suit, and the twenty-six other farmers were plaintiffs in

another suit. Appellees sued Appellants, as well as the cotton gin that acted as Appellees' agent when Appellees entered into the contracts, and asserted several causes of action, including claims such as fraud, negligent misrepresentation, and breach of fiduciary duty. Appellants filed a motion to compel arbitration in each case based on the mandatory arbitration agreement contained in the contracts. The trial court found that the arbitration agreement was unconscionable, and it denied Appellants' motions to compel arbitration.

In a single issue, Appellants argued that the trial court erred when it found that the arbitration agreement was unconscionable and, thus, unenforceable. Specifically, Appellants challenged Appellees' arguments that the agreement was procedurally unconscionable on one ground and substantively unconscionable on three grounds. In a footnote, Appellants also challenged Appellees' argument, to the extent that Appellees raised it, that the agreement was substantively unconscionable because of a conflict of interest or favorable bias present between Appellants and the arbitration committee. Appellants also addressed the issue of whether the underlying controversies were within the scope of an arbitration agreement governed by the FAA; however, Appellees did not dispute that issue.

We initially affirmed the orders in which the trial court denied Appellants' motions to compel. *See Venture Cotton Coop. v. Freeman*, 395 S.W.3d 272 (Tex. App.—Eastland 2013), *rev'd*, 435 S.W.3d 222 (Tex. 2014) (*Venture Cotton I*). In that opinion, based on the arguments in the parties' briefs, we set out five arguments[1] that Appellees raised in the trial court and that Appellants challenged on appeal as to whether the agreement was substantively unconscionable. *Id.* at 274–75. We held that the arbitration agreement was substantively unconscionable

---

[1]We note that Appellants raised four challenges to Appellees' arguments that the agreement was substantively unconscionable. We divided one of those challenges into two, creating a total of five arguments regarding whether the agreement was substantively unconscionable. It was on the one ground that we divided into two that we initially affirmed the trial court's orders.

on two of the five grounds raised by Appellees. *Id.* at 274–76. We did not reach the other three grounds raised by Appellees in the trial court and challenged by Appellants on appeal, nor did we reach the argument regarding procedural unconscionability. *Id.* at 277. Because Appellees did not dispute that the underlying controversies fell within the arbitration agreement, we also declined to address that issue, and we assumed without deciding that the claims fell within the agreement's scope. *Id.* at 274. The two grounds that we found to be unconscionable were that certain provisions in the arbitration agreement and in the American Cotton Shippers Association's (ACSA) rules prevented Appellees from recovering statutory remedies under the Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63 (West 2011 & Supp. 2014), and from recovering attorney's fees under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015). *Id.* at 274–76. We also held that the trial court did not err when it did not sever the unconscionable terms from the agreement because Appellants never asked the trial court to sever the terms. *Id.* at 277. Therefore, we held that Appellants waived that argument. *Id.*

After it granted Appellants' petition for review, the Supreme Court of Texas concluded that the limitation on the recovery of statutory remedies and attorney's fees that we held to be unconscionable was insufficient to defeat arbitration under the FAA. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 225, 233 (Tex. 2014) (*Venture Cotton II*). The court opined that Appellees did not contractually waive the DTPA remedies at issue and that, as such, any implied waiver under the ACSA rules was "contrary to public policy and therefore invalid." *Id.* at 230. In addition, the court held that we erred when we declined to consider the severability issue even though Appellants did not present the issue to the trial court. *Id.* at 230. The court reasoned that, because "this is an interlocutory appeal, and the case remains pending in the trial court," Appellants could raise the severability

3

argument when the case was again before the trial court. *Id.* "Conservation of time and resources recommend that we consider the issue now because nothing prevents Venture from urging severance in the trial court and, if denied, from renewing its complaint in yet another interlocutory appeal." *Id.* The court concluded that the limitation upon recovery of statutory rights and remedies under the DTPA was not an essential purpose of the agreement and that we erred when we "declin[ed] to sever the objectionable limitation on the farmers' statutory rights." *Id.* at 230–31 (relying on *In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) (orig. proceeding)). Therefore, we now sever the following provision from the ACSA rules: "The awards shall be limited to the monetary damages arising out of the failure of either party to perform its obligations pursuant to the contract as determined by the Arbitration Committee and shall not include attorney's fees unless provided for in the contract."

With regard to attorney's fees, the court concluded "that neither the contract's attorney's fee provision nor its effect on attorney's fees under Section 38.001 is sufficient to invalidate the arbitration agreement as unconscionable." *Id.* at 231. The court explained that "a contract that expressly provides for one party's attorney's fees, but not another's, is not unconscionable per se"; "the attorney's fee provision here is not, standing alone, decisive proof of an unconscionable bargain." *Id.*

In this court originally, Appellants argued that Appellees had contractually waived their right to recover attorney's fees and that, because they had, they could not recover attorney's fees under Section 38.001. However, we disagreed and held that waivers must be specific in order to be effective. *Venture Cotton I*, 395 S.W.3d at 276 (citing *Tex. Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 701 (5th Cir. 1989)). Because there was no specific waiver of attorney's fees under

4

Section 38.001, we concluded that Appellees had not waived their rights to attorney's fees under Section 38.001. *Id.*

On appeal from our earlier decision, the supreme court wrote: "[T]he court of appeals itself concludes that the arbitration agreement did not waive the farmers' statutory right to attorney's fees under section 38.001 and so its relevancy to the court's unconscionability analysis is unclear." *Venture Cotton II*, 435 S.W.3d at 231. The supreme court then concluded that because we had found that, no harm had been visited upon Appellees, the agreement to arbitrate was not unconscionable. *Id.* at 232.

We concede that we inartfully chose our words in *Venture Cotton I*; we did not intend to convey the idea that Appellees were not harmed. We felt that the harm was found in the fact that Appellees could not recover attorney's fees under Section 38.001 even though they had not waived them. That is because of the following provisions in the ACSA rules and the arbitration agreement: "[A]wards shall be limited to the monetary damages arising out of the failure of either party to perform its obligations pursuant to the contract . . . and shall not include attorney's fees unless provided for in the contract," and "[i]n the event of breach of this Agreement by [Appellees], [Appellees] agree[] to pay all arbitration and court costs, if any, and the reasonable attorney's fees and litigation and arbitration expenses of Venture." By those provisions, Appellees could not recover attorney's fees even if they were otherwise entitled to them. The ACSA provision has now been severed from the remaining provisions of the ACSA rules.

The supreme court indicated in its opinion that it was premature for us to consider whether these provisions that limited the recovery of Appellees' attorney's fees were unenforceable, and it instructed that such determinations should be entrusted to the arbitrator. *Id.* at 232–33; see also, *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, No. 13-0497, 2015 WL 1288373, at *11–12 (Tex.

Mar. 20, 2015) (not yet released for publication) (holding that whether arbitration agreement limits rights under the agreement itself is an issue of procedural arbitrability and is for the arbitrators to decide). As instructed, we will leave that determination to the arbitration committee.

The supreme court reversed the judgment of this court, and it remanded the case for us to consider the remaining arguments on the issue of unconscionability. *Id.* at 225. Therefore, we must first address whether the other three grounds of unconscionability raised by Appellees in the trial court and challenged by Appellants on appeal were in fact substantively unconscionable.

The other three grounds of unconscionability that we did not reach in our first opinion are as follows: (1) whether the ACSA rules provided an arbitration forum that was cost prohibitive due to fee shifting and excessive costs; (2) whether the rules limited Appellees' right to discovery; and (3) whether there was a conflict of interest between Appellants and the ACSA. "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding). "Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided." *Poly-America*, 262 S.W.3d at 348.

As to Appellees' argument that the ACSA rules provided an arbitration forum that was cost prohibitive, Appellants argue that Appellees failed to establish that they would incur excessive arbitration costs and that such costs would deter Appellees from pursuing their claims against Appellants. We agree that Appellees failed to meet their requisite burden of proof. "[E]xcessive costs imposed by an

6

arbitration agreement render a contract unconscionable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010) (orig. proceeding) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).  The party that opposes arbitration has the burden of proof.  *Id.*  It is not sufficient for the party to show that it is at risk of incurring excessive fees and costs.  *Poly-America,* 262 S.W.3d at 356 ("the 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement") (alteration in original) (quoting *Green Tree*, 531 U.S. at 91) (internal quotation marks omitted).  The complaining party must present "*some evidence* that [it] will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum."  *Id.* (citing *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007); *FirstMerit Bank*, 52 S.W.3d at 756–57)).  Such evidence may be shown "through invoices, expert testimony, reliable cost estimates, or other comparable evidence."  *Olshan*, 328 S.W.3d at 895.

To determine whether an arbitral forum is an adequate substitute to litigation on the basis of costs, we analyze three factors: (1) the claimant's ability to pay the arbitration fees and costs, (2) the expected cost differential between arbitration and litigation and whether that differential is so substantial that it deters the claimant from bringing its claims, and (3) the actual cost of arbitration compared to the total amount of damages that the claimant is seeking.  *Id.* at 893–95.  "[A] comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation."  *Id.* at 894–95.  At the hearing on the motions to compel arbitration, Appellees presented general testimony about how the arbitral forum was cost prohibitive in comparison to litigation.  Robert Perry Brewer, one of the Appellees, testified that, based on his reading of Appellants' arbitration demand letter and the arbitration

7

rules, he would have to pay all arbitration costs, court costs, and attorney's fees. Shelby Alan Freeman, another Appellee, testified that he agreed with Brewer's testimony and understanding of the arbitration rules. Although Freeman testified that he did not know the exact amount of what the arbitration costs would be, he agreed that it would easily be in the tens of thousands of dollars and that he could not afford to pay those expenses. Freeman further testified about the potential for Appellees to have to be away from their farms during the critical planting season; he explained that one could not put a dollar amount on that cost. David Bergen, another Appellee, also testified that he could not afford to go to arbitration. Out of the twenty-eight Appellees, Brewer, Freeman, and Bergen were the only three that testified that they could not afford the costs of arbitration; however, none of the three testified at the hearing as to what specific cost amounts they would incur if they were subject to arbitration under the ACSA rules.

Appellees attached an affidavit by Brewer to their post-hearing brief in which Brewer provided detailed cost estimates for fees and travel for Appellees and the arbitrators. Brewer calculated that the cost of arbitration would be $167,314, without an appeal, and that the cost of trial—a filing fee and a jury fee—would be $265. However, Appellants objected to, and the trial court struck, Brewer's affidavit. Thus, we cannot consider this evidence in our review of whether Appellees presented sufficient evidence to show that they would incur arbitration costs in such an amount as to deter them from pursuing their claims in the arbitral forum.

Although none of Appellees testified as to the specific fees imposed under the ACSA rules, the rules were admitted into evidence, and the rules provide for what expenses the parties must bear. The rules require that the party that requests arbitration must submit an arbitration service fee in the amount of one-half of one percent of the amount claimed for damages along with the party's complaint.

ACSA members must pay a minimum of $1,000 and a maximum of $3,000. Nonmembers must pay a minimum of $5,000; no maximum amount is specified. It is undisputed that Appellants are members of the ACSA and that Appellees are nonmembers. Appellees argue that, for just two of the farmers, the filing fee of one-half of one percent of their $6,771,270 claim is $33,856.35. However, Appellants have already filed a complaint against Appellees and paid the required service fee. Under the rules, Appellees are permitted "to file a cross-complaint, counterclaim, or offset, arising out of the same transaction upon which the complaint is based." The rules do not address whether the party that files a cross-complaint, counterclaim, or offset must also submit a fee with its filing as is the case when a party files a complaint. Therefore, based on our review of the rules and the testimony Appellees presented at the hearing, Appellees have not shown that they will likely incur such an exorbitant filing fee.

In addition to the filing fees, the rules also provide that "an amount *may* be required to compensate the arbitrators for their time and reimburse them for expenses (including travel and legal counsel), if any" (emphasis added). This additional amount is paid equally by the parties. "Unless it demonstrates by affidavit and proof satisfactory to the arbitrators that it is unable to pay its share of fees and expenses, a party refusing to pay its share of fees or expenses shall forfeit its right to appear and be heard." This section of the rules provides nothing but speculation as to whether Appellees will incur any costs related to the arbitrators' time and expenses. Furthermore, even if Appellees were required to pay these extra costs, the rules provide an opportunity for Appellees to show that they could not afford to pay such costs and, thus, could avoid the additional costs altogether.

Appellees also raised a concern regarding the costs associated with requesting a hearing before the arbitration panel. The ACSA rules provide that the party requesting the hearing must pay the additional expenses of the hearing,

including the expense to make the record and the travel expenses of the arbitrators, the executive vice president, and legal counsel for the ACSA. Nonmembers must advance the amount that the arbitrators determine is necessary to cover such expense. If both parties request a hearing, "the amount to be paid by each in advance shall not exceed one-half of the estimated amount." "Failure to advance expenses may be grounds for denying a request for an oral hearing or rendering the noncomplying party in default." Parties are refunded any money paid in excess of the actual expense of the hearing. While it appears that Appellees would have to advance the full estimated cost of the hearing *if* they were the only party to request a hearing, the rules provide that Appellees could be awarded those fees in the arbitrators' decision.

The rules further provide that an oral hearing, if requested, shall be held in Memphis, Tennessee. Thus, Appellees also argue that they would have to pay for themselves—twenty-eight farmers—to travel to and stay in Memphis, which would "easily run into the tens of thousands of dollars." Appellants assert that Appellees can request the hearing to be held in Houston, Texas, instead of in Memphis. The arbitration agreement provides that "[t]he site of the arbitration shall be either Houston, Texas or Memphis, Tennessee, as chosen by Venture, unless otherwise directed by the arbitrator(s)." Brewer testified that the rules, based on his understanding, required that the hearing would be conducted in Memphis. Although the arbitration agreement provides that Venture may choose the "site of the arbitration," the rules expressly provide that oral hearings shall be held in Memphis. Thus, based on the rules, it does not appear that Appellees can request the hearing to be held in Houston. As we discussed earlier, although Brewer testified by affidavit regarding detailed estimates of the costs for all twenty-eight farmers to travel to Memphis, the trial court struck Brewer's affidavit, and we cannot consider it as evidence in our review. Appellees have not presented

any other specific evidence as to the costs associated with traveling to Memphis. Furthermore, it is not known whether a hearing will even be necessary in the arbitral forum, nor is it known whether all twenty-eight farmers would actually attend the hearing, considering the fact that only three of the farmers testified at the hearing on the motions to compel arbitration. We do not believe that Appellees have sufficiently shown that the potential cost of a possible arbitration hearing is so great as to deter them from filing their cross-claims in the arbitral forum.

The ACSA rules also contain provisions relating to appellate costs. A party who wishes to appeal the arbitrators' decision must pay an appellate fee equal to the filing fee, with a minimum fee of $1,000 and a maximum fee of $3,000. The appealing party must also send a certified check for the amount of the arbitrators' award, payable to the adverse party. The rules require the executive vice president to hold the check while the appeal is pending. Nonmembers who request oral argument on appeal must also pay for the estimated appellate hearing expenses in advance. As with the other cost provisions that we have evaluated, this one is also speculative. If the arbitrators grant Appellees the relief that they seek, there will be no reason for Appellees to incur any appellate costs.

Likewise, Appellees' argument that the arbitration agreement provides that they must pay all arbitration expenses and attorney's fees is without merit. While it is true that the agreement provides that Appellees agreed "to pay all arbitration and court costs, if any, and the reasonable attorney's fees and litigation and arbitration expenses of Venture," the agreement only requires Appellees to pay such costs and attorney's fees *if* they breached their contracts with Venture. If the arbitrators do not find that Appellees breached their contracts with Venture, Appellees will not be required to pay all of Venture's costs under this provision. Moreover, the rules provide that "[t]he arbitrators may, in their decision and award, provide for payment by one party to the other of all or any part of fees and

11

expenses incurred." Therefore, if Appellees are successful in their claims against Appellants, Appellees may ultimately bear no cost at all in the arbitral forum.

As to evidence of litigation costs, the only mention of litigation costs during the hearing on the motions to compel came when Freeman's attorney questioned him as to whether he had been asked to pay for an attorney for the district judge or for the judge's travel, meals, expenses, or time. Freeman testified that he had not been asked to pay for those things and that, if he had, it would be tough for him to pay those costs. Thus, Appellees also failed to present, during the hearing on the motions to compel arbitration, any specific evidence regarding the cost of litigation. As we have previously discussed, we cannot consider Brewer's affidavit in which Brewer testified that the cost of litigation would be $265.

Because Appellees failed to present any evidence of the cost of litigation and because the evidence regarding the cost of arbitration was speculative, we cannot compare the total costs of the two forums. Therefore, we conclude that Appellees did not present sufficient evidence to show that arbitration of their claims would be unconscionable on the ground that the arbitral forum was cost prohibitive. *See Olshan*, 328 S.W.3d at 897, 899.

The next argument that we must consider is whether the arbitration agreement is substantively unconscionable because the ACSA rules limit Appellees' right to discovery. We look to whether the agreement imposes discovery limitations that would prevent a party from effectively presenting its claims. *Poly-America*, 262 S.W.3d at 358. Here, however, the rules do not expressly limit Appellees' right to discovery. The rules provide that "[t]he scope of discovery in any matter submitted pursuant to these rules shall be subject to the discretion of the arbitrators." Appellees argue that, although discovery is at the discretion of the arbitration panel, there is no time allowed for discovery under the rules because the rules also require the panel to act promptly and to make a report

within thirty days of receiving the final papers from the executive vice president. Although the rules do not specify when and how discovery is permitted, we assume that the arbitrators can allow for discovery and extend the deadline of when the final papers are due if necessary. One of the specific concerns raised at the hearing on the motions to compel was that, if the parties had to submit to arbitration, the pleading deadline in the arbitral forum would expire before the federal government completed its yearly documentation of the amount that each farm produced. Because several years have elapsed since the initial hearing on the motions to compel, we assume that this specific concern is now moot.

Appellees also argue that no procedures exist under the rules that permit witnesses to testify or that allow a party to cross-examine the opposing party's witnesses. While this is true, the rules are silent as to whether testimony is permitted at a requested hearing; thus, it is equally true to state that the rules do not prohibit witnesses from testifying or from being cross-examined.

Appellees further assert that Appellants' course of conduct was unconscionable when Appellants demanded that some farmers, who fully delivered the bales of cotton that they produced, be sent to arbitration. For example, Bergen testified that he fully delivered all the bales of cotton that he produced, yet he still received an arbitration demand letter. Bergen further testified that, without a right to discovery in the arbitral forum, he was worried that he would have to fight a claim that Appellants had not even tried to substantiate. Appellees contend that, if those farmers, such as Bergen, were allowed to proceed in the trial court instead of being sent to arbitration, they could file a motion for summary judgment and defeat Appellants' claim that they breached the contract. While we agree that Appellants should not succeed on their breach of contract claims until they prove that Appellees did not deliver the bales of cotton as required under the contract, we do not believe that the arbitrators will rule in favor of Appellants without such proof.

13

The rules provide that "[p]arties to the arbitration are responsible for clearly presenting all aspects of their case (the Executive Vice President and the Arbitration panel are not responsible for undertaking fact-finding searches or discovery)." There is no provision in the rules that allows Appellants to succeed on any claim before the arbitrators without presenting sufficient evidence to prove such claim. We also note that, while the rules state that the arbitration panel is "not responsible for undertaking fact-finding searches or discovery," the same is true for a trial court or jury. While the trial court or jury is responsible for finding facts based on the evidence presented, the factfinder is not responsible for discovering facts.

At this juncture, Appellees have not shown that their right to discovery will be limited in any way in the arbitral forum. Thus, until an arbitrator actually denies Appellees' requests for discovery, it is only speculative that Appellees' right to discovery will be limited. Therefore, Appellees' argument does not support their claim that the arbitration agreement is substantively unconscionable.

The third argument that Appellees raised in the trial court and that Appellants challenge on appeal, as to whether the agreement was substantively unconscionable, deals with Appellants' relationship with the ACSA. Appellees contended that a conflict of interest existed between Appellants and the ACSA because the manager of Noble, one of the Appellants, was also on the ACSA's board of directors and because Appellants' legal counsel was also legal counsel for the ACSA. However, according to the ACSA's rules, it does not appear that any one director on the board plays a vital role in the arbitration process. The executive vice president and the president have active roles in the selection process in that the executive vice president selects the three arbitrators to hear a case and the president approves the selection. Arbitrators are "selected from the membership, retired members, or from a roster of qualified arbitrators approved by

the Board of Directors." Thus, it is possible that the arbitrators that are selected by the executive vice president to hear this case will come from a list of arbitrators that Noble's manager, as one of the directors on the board, approved. However, the rules also provide that, "[t]o qualify as an arbitrator, a member should be commercially disinterested with respect to the particular dispute intended to be presented to him for judgment." A selected arbitrator must also disclose "any circumstances likely to affect his or her impartiality, including any bias or any financial or personal interest in the result of the arbitration." Such arbitrator shall be replaced if either party requests replacement. Furthermore, "either party to the case may challenge the appointment of [an arbitrator] for prejudicial or other causes." And, if the challenge is determined to be valid, the executive vice president is to replace the arbitrator. Parties may also challenge the appointment of an arbitrator in an appeal of the initial award.

Appellees argue that their ability to object to appointed arbitrators is a "hollow and worthless right because disqualification simply leads to an endless procession of ACSA cotton merchant members" who will "benefit from arbitration rulings that favor member cotton merchants in disputes with non-member cotton producers." Appellees do not argue whether unbiased arbitrators *can*, in general, be found. Instead, they argue whether, under the rules in this case, unbiased arbitrators *will* be found. However, according to the rules, arbitrators are not necessarily members or retired members of the ACSA. They may also be selected "from a roster of qualified arbitrators approved by the Board of Directors."

While it is possible that the arbitral forum will be biased because one of the Appellants serves on the board of directors for the ACSA and because he or she might play a role in approving a biased arbitrator that is not replaced upon request, it is simply that—a mere possibility. Until Appellees are denied access to unbiased arbitrators, it would be a matter of pure speculation to find that there is a conflict of

15

interest that will not be resolved. *See Lawson v. Archer*, 267 S.W.3d 376, 384 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("We do not know who the specific arbitrators will be; and, like the United States Supreme Court . . . , we 'decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991)).

Regarding Appellees' argument that there is a conflict of interest because Appellants' legal counsel is also legal counsel for the ACSA, Appellants contend that there is no indication from the record that Appellants' legal counsel will violate the rules of professional conduct regarding conflicts of interest by representing Appellants and counseling the arbitrators. Appellants also contend that there is no evidence that the ACSA will violate the provisions of the FAA by engaging in conduct that would authorize a court to vacate the arbitrators' decision. If indeed Appellants' counsel were to continue to represent Appellants and advise the arbitrators in ruling on this case, there would be no doubt that the arbitral forum would be partial. But we cannot speculate as to what will happen in the future.

Appellees also argue that Venture has exclusive access to prior ACSA arbitration decisions allowing Venture to tailor its arbitration strategy based on prior successful or failed arguments and the tendencies of particular arbitrators. The rules require the ACSA to publish, to all of its members, a bulletin that includes the details of all cases arbitrated, the awards made, the full text of all decisions, the names of all the parties, and any other information that may be of interest to its members. Appellees assert that there is no mechanism for a nonmember to receive or request the ACSA's arbitration bulletins. As to this issue, the rules are again silent. We do not know whether Appellees would be

denied access to these bulletins or to the information contained in the bulletins if Appellees presented their request to the ACSA or if Appellees requested such information in discovery.

Because Appellees failed to present evidence that the ACSA will in fact provide biased arbitrators to hear Appellees' case, that Appellants' legal counsel will in fact continue to represent both Appellants and the ACSA during the arbitration proceedings, or that Appellants have access to pertinent information that Appellees cannot in fact obtain, Appellees have failed to show that the rules prevent them from effectively vindicating their rights in the arbitral forum. Therefore, Appellees' argument that the arbitral forum will be biased does not support the trial court's determination that the arbitration agreement was unconscionable.

Another issue that Appellants raised in their briefs, but that we did not address in our first opinion, is whether the arbitration agreement was procedurally unconscionable. Although Appellees candidly admitted in their response brief that this argument was probably not the basis of the trial court's finding that the agreement was unconscionable and although Appellees stated that they were not advancing this argument on appeal, we will nevertheless address this issue because it was presented to the trial court for consideration in its determination of whether the arbitration agreement was unconscionable. The trial court did not express its reasons for finding the agreement unconscionable, nor did the trial court specifically exclude Appellees' procedural argument as a basis for its finding of unconscionability; to avoid addressing it at a later date, we will address it now.

Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration provision." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). Appellees argued that the arbitration agreement was procedurally unconscionable because Venture misrepresented the terms of the contract and

17

fraudulently induced Appellees to enter into the contract as a result. However, this argument goes toward Appellees' misrepresentation and fraudulent inducement claims as to the contract as a whole, not as to the arbitration agreement itself. "[D]efenses must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration. Defenses that pertain to the entire . . . contract can be arbitrated." *FirstMerit Bank*, 52 S.W.3d at 756 (footnote omitted). Therefore, this argument does not support the trial court's finding that the arbitration agreement was unconscionable.

Appellees also argued that the arbitration agreement was procedurally unconscionable because Venture was the sole drafter of the agreement and yet Venture did not disclose the ACSA rules, describe the rules, or warn that the rules were biased against Appellees. Appellants counter that the rules were readily available on the ACSA website and that Appellees had notice of and an opportunity to review the rules before agreeing to arbitration under them.

Appellants were not present when Appellees entered into the contracts. Ocho Gin Company, Ltd., a cotton gin that allowed Appellants to present their proposal to any interested farmers, acted as a facilitator between Appellants and Appellees. One of Ocho Gin's employees, who marketed and sold cotton for the gin, was the person who mainly facilitated Appellees' enrollment into the Venture Cotton pool. She testified at the hearing on the motions to compel that she vaguely read the arbitration provision in the contract but that she did not tell Appellees that there was an arbitration provision. Brewer testified that he did not know there was an arbitration provision in the contract when he signed the contract. Ocho Gin's employee also testified that she did not go to the ACSA website to obtain a copy of the ACSA rules for arbitration and that she did not know what the rules required or prohibited. However, she believed that most cotton contracts contained an arbitration clause. It does not appear from the record that Appellees read the

contract before signing it. And although each Appellee signed at least one of the documents in the contract, some of them did not sign the specific document that contained the arbitration provision.

Regardless of whether Appellants or Ocho Gin told Appellees that there was an arbitration clause in the contract and regardless of whether Appellees read the contract or read the rules, the contract clearly provided that "[a]ll disputes will be resolved pursuant to binding arbitration pursuant to the arbitration rules of the American Cotton Shippers Association." A party is bound to the contract he signs regardless of whether he read it or believed it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding). While the ACSA rules were not attached to the contract, they were referenced and readily available on the ACSA website. "A contractual term is not rendered invalid merely because it exists in a document incorporated by reference." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)); *see also In re December Nine Co.*, 225 S.W.3d 693, 702 (Tex. App.—El Paso 2006, orig. proceeding.) ("We fail to see how having to request a copy of the incorporated Rules is so onerous a requirement as to amount to procedural or substantive unconscionability.").

Appellees' complaint that not all Appellees signed the specific document that contained the arbitration provision is also without merit. It is well settled that an unsigned document may be incorporated by reference in the signed document. *Owen*, 433 S.W.2d at 166. Here, each Appellee signed a document titled "Annual Enrollment Agreement."[2] The Annual Enrollment Agreement provided that the undersigned agreed to sell and deliver cotton to Venture in accordance with the Membership and Marketing Agreement. The Membership and Marketing

---

[2]We have not been able to locate the signature page of the Annual Enrollment Agreement for Appellee Gerardo Froese. However, we have located his signature on the document titled "Terms and Conditions of Enrollment," and this document also references the Membership and Marketing Agreement.

19

Agreement contained the arbitration clause. Thus, the failure by some Appellees to sign the Membership and Marketing Agreement does not invalidate the arbitration agreement. *See, e.g.*, *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied) (holding that an unsigned arbitration agreement contained in a document incorporated by reference into the signed contract constitutes an enforceable arbitration agreement). Appellees have not shown that the arbitration agreement was procedurally unconscionable. Therefore, Appellees' procedural unconscionability arguments do not support the trial court's finding that the arbitration agreement was unconscionable.

Although not addressed on appeal by the parties, Appellees raised two other arguments in the trial court in support of their claim that the arbitration agreement was substantively unconscionable. Because the trial court was presented with these two additional arguments, we feel that, in this interlocutory appeal, we must determine whether either argument could support the trial court's conclusion that the agreement was unconscionable.

The first argument we will address is whether Appellees would be limited in their ability to adequately present their counterclaims in the arbitration forum as a result of the provision in the rules that provides that "in no case shall the matters submitted by the defendant be any other than those directly related to the transaction on which the original complaint is made." Appellees argued that this rule prohibits any meaningful assertion of counterclaims by Appellees against Appellants, and they further claimed that there is a real risk that Appellees will not have a meaningful forum in which to adjudicate their counterclaims. Specifically, Appellees argued that they would be barred from bringing claims under the DTPA, bringing claims for consequential damages, and bringing claims for punitive damages. At the hearing on the motions to compel arbitration, Brewer testified

that the rules required him to waive *any* counterclaims against Appellants, except as to the manner in which Appellants framed the dispute.

We have previously addressed Appellees' argument that they cannot recover certain damages under the ACSA rules, and we have now severed from the agreement the ACSA rule that limited arbitration awards so that the rules no longer limit the type of damages that the arbitrators can award. It appears from the arguments of the parties that Appellants have initiated an arbitration proceeding against Appellees for breach of contract. The rules require that any counterclaim filed by Appellees be "directly related to the transaction on which the original complaint is made." We do not see how any of Appellees' counterclaims, such as fraudulent inducement, would be barred under the ACSA rules. To the contrary, it appears to us that the claims that Appellees have raised against Appellants in the trial court are "directly related" to the contract—"the transaction"—that Appellants have claimed Appellees breached. We do not believe that Appellees will be limited in their ability to adequately present their counterclaims in the arbitral forum. Therefore, this argument also does not support the trial court's conclusion that the agreement was unconscionable.

The second argument that was presented to the trial court but that was not presented on appeal is whether Ocho Gin is subject to the arbitration agreement. Appellees argued at the hearing on the motions to compel arbitration that the arbitration rules deprived them of their right to pursue claims against Ocho Gin for joint and several liability because Ocho Gin was not subject to arbitration and that the arbitral forum did not have any jurisdiction over Ocho Gin. Appellants responded in a post-hearing brief that, although Ocho Gin was a non-signatory to the arbitration agreement, Ocho Gin should be compelled to arbitration based on contract principals such as agency and estoppel.

Even if we assume that Ocho Gin is not bound by the arbitration agreement and that Appellees cannot pursue their claims against Ocho Gin in arbitration without Ocho Gin's consent, we have not found any authority that stands for the proposition that an arbitration agreement is unconscionable under such circumstances. We have found, however, authority that suggests such circumstances would not render the agreement unconscionable. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (holding third-party beneficiary's limited right, as provided for in the contract, to opt out of arbitration did not render the arbitration agreement so one-sided as to be substantively unconscionable). Therefore, Appellees' argument that the arbitration rules deprive Appellees of their right to pursue claims against Ocho Gin for joint and several liability does not support the trial court's finding that the agreement was unconscionable.

Because we conclude that none of Appellees' remaining arguments support a finding that the agreement was unconscionable and because we have now severed the ACSA provision that limits the award an arbitrator can give, we find that the trial court abused its discretion when it did not grant Appellants' motions to compel arbitration.

We reverse the orders of the trial court and remand this cause to the trial court for the court to enter an order in which it compels the parties to arbitration and in which it stays all proceedings in the trial court until the conclusion of such arbitration.

April 30, 2015                      JIM R. WRIGHT

Panel consists of: Wright, C.J.,         CHIEF JUSTICE
Willson, J., and McCall.[3]

Bailey, J., not participating.

---

[3]Terry McCall, Retired Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.