**Opinion filed January 10, 2019**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-17-00167-CV

_____

## 21st MORTGAGE CORPORATION
## AND OAK CREEK HOMES, LP, Appellants

## V.

## JOE AND BRENDA MOORE, Appellees

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 022737**

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal involves claims that arose from the sale of a manufactured home. Appellants, 21st Mortgage Corporation and Oak Creek Homes, LP, seek to compel Appellees, Brenda and Joe Moore, to submit their claims to arbitration. Appellants challenge the trial court's denial of their motion to compel arbitration in five issues. We reverse and remand.

We note at the outset that this is the second appeal we have considered involving these parties. The previous appeal was another interlocutory appeal concerning the Appellants' efforts to compel arbitration. *Oak Creek Homes, LP v. Moore*, No. 11-15-00291-CV, 2016 WL 6998949 (Tex. App.—Eastland Nov. 30, 2016, no pet.) (mem. op.). We dismissed the previous interlocutory appeal for want of jurisdiction. *Id.* at *1. We also considered a mandamus petition filed by Appellants. We discuss both proceedings below.

*Background Facts*

According to their pleadings, the Moores purchased a manufactured home and subsequently began to experience problems with the home to the point that it was "arguably uninhabitable." The home was manufactured by Oak Creek, and the Moores financed the home through 21st Mortgage. On April 23, 2012, the Moores sued both parties and alleged claims for breach of warranty and for violations of the DTPA.

In the process of purchasing the home, the Moores had signed two arbitration agreements: one with Nationwide Housing Systems L.P. dba Oak Creek Home Center and one with 21st Mortgage. After the Moores filed the suit, 21st Mortgage filed a motion to compel arbitration, and the parties subsequently agreed that the dispute should be resolved in arbitration. At this point in time, Oak Creek had not filed a motion to compel arbitration. On October 16, 2012, the trial court entered an agreed order in which it abated the case and compelled arbitration.

During the arbitration process, the Moores claimed that a conflict of interest had arisen due to the alleged relationship between the arbitrator and counsel for Oak Creek. As a result, the arbitrator withdrew. Subsequently, the Moores filed a motion to rescind the agreed order to arbitrate. On October 27, 2015, the trial court granted the motion to rescind and scheduled the case for trial for December 15, 2015.

Appellants filed a notice of appeal of the trial court's October 27, 2015 order granting the Moores' motion to rescind the agreed order to arbitrate. Appellants subsequently filed motions to compel arbitration. The trial court denied these motions to compel arbitration on December 8, 2015. Appellants attempted to appeal the trial court's December 8, 2015 order denying the motions to compel arbitration in their interlocutory appeal of the October 27, 2015 order.[1] *Id.* For the reasons expressed in our previous opinion, we concluded that Appellants did not invoke our appellate jurisdiction for an appeal of the December 8, 2015 order. *Id.* at *3–4. Accordingly, we dismissed the prior interlocutory appeal for want of jurisdiction.

For the most part, this appeal concerns matters occurring in the trial court after the issuance of a prior opinion. After the case was remanded to the trial court, the Moores filed an amended petition. Appellants contend that the new petition added new claims against 21st Mortgage. 21st Mortgage subsequently filed an amended plea in abatement and second motion to compel arbitration. On the same day, Oak Creek filed a pleading joining 21st Mortgage's amended plea in abatement and second motion to compel arbitration. Following a hearing, the trial court denied the second motion to compel arbitration in a written order entered on May 31, 2017. However, the trial court did not state its reason for denying the motion in its order. Appellants bring this interlocutory appeal from the trial court's May 31, 2017 order denying Appellants' second motion to compel arbitration.

---

[1]Appellants also challenged the December 8, 2015 order in a mandamus proceeding filed in our court as Cause No. 11-15-00334-CV. *See Oak Creek Homes, LP v. Moore*, 2016 WL 6998949, at *1. We denied the mandamus petition without issuing an opinion. However, we addressed the mandamus in our opinion in the prior interlocutory appeal. *Id.* at *3. We indicated that we denied the mandamus on the basis that Appellants had an adequate remedy by interlocutory appeal. *Id.*

*Analysis*

As a threshold matter, we address our jurisdiction to consider this interlocutory appeal. Interlocutory orders may be appealed only if permitted by statute and only to the extent jurisdiction is conferred by statute. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). We determined in the first appeal that the relevant arbitration agreements are governed by the Federal Arbitration Act (FAA). *Id.* at *1–2; s*ee* 9 U.S.C. §§ 1–16. Section 51.016 of the Texas Civil Practice and Remedies Code permits an interlocutory appeal of an order denying a motion to compel arbitration when the FAA governs the arbitration agreement. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015); *see also* 9 U.S.C. § 16(a)(1)(B), (C).

Appellants timely filed a notice of appeal from the trial court's May 31, 2017 order. *See* TEX. R. APP. P. 26.1(b), 28.1; *see also Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). By its express terms, the May 31, 2017 order is an order denying a motion to compel arbitration. However, the opinion in *Osborn* addresses another jurisdictional matter—did the trial court's May 31, 2017 order address a "distinct motion to compel arbitration" or was the motion actually a motion to reconsider the denial of a previous motion to compel arbitration? *Osborn*, 532 S.W.3d at 11–12. Appellants assert that the order is appealable because their second motion to compel arbitration was filed after the Moores filed an amended petition asserting new causes of action against 21st Mortgage, including new claims that 21st Mortgage was individually liable for their damages and that 21st Mortgage was acting in concert with Oak Creek. We agree.

Appellants' second motion to compel arbitration arose from a different arbitration agreement than the one relied upon for the previous motions to compel.

Furthermore, the Moores presented a new argument—that the 21st Mortgage arbitration agreement was procedurally "worse" than the arbitration agreement that was the subject of the previous motion to compel arbitration. Because the second motion to compel arbitration arose from a different arbitration agreement and it involved a new argument, it constituted a distinct motion to compel arbitration rather than a motion to reconsider the previous motion to compel arbitration. *Id.*; *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 348–49 (Tex. App.—El Paso 2012, no pet.). Accordingly, we have jurisdiction to consider this interlocutory appeal of the trial court's May 31, 2017 order denying Appellants' second motion to compel arbitration.

Appellants bring five issues on appeal. In their fifth issue, Appellants assert that the Moores "waived their arguments" to withdraw the case from arbitration when they initially agreed in 2012 for the case to be submitted to arbitration. However, Appellants did not present this waiver argument in their second motion to compel arbitration that the trial court overruled in its May 31, 2017 order. Accordingly, Appellants have not preserved their waiver contention for appellate review. *See* TEX. R. APP. P. 33.1(a). We overrule Appellants' fifth issue.

In their first four issues, Appellants address whether the trial court abused its discretion by denying Appellants' second motion to compel arbitration. Some of Appellants' first four issues are contentions made in anticipation of matters that the Moores might assert on appeal in support of the trial court's May 31, 2017 order denying Appellants' second motion to compel arbitration.

Appellants' first issue is an anticipatory issue. Appellants assert that their second motion to compel arbitration was properly filed after the denial of the initial motion to compel arbitration. In some respects, it appears that Appellants are attempting to show that the "law of the case" doctrine does not apply since "the

issues of law and facts have changed" when the Moores amended their petition. Appellants cite *In re Prudential Securities, Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding), in support of this contention. Under the "law of the case" doctrine, the ruling of an appellate court on a question of law raised on appeal will be considered the law of the case in any subsequent proceeding unless clearly erroneous. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). This doctrine only applies if the issues of law and fact are substantially the same in the first and second proceedings. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Prudential Sec.*, 159 S.W.3d at 283. Other than determining that the arbitration agreements were subject to the FAA, we did not address the merits of the case in the prior appeal. Accordingly, our prior opinion does not preclude this appeal under the "law of the case" doctrine. We sustain Appellants' first issue.

Appellants' fourth issue is another issue anticipating an argument that the Moores might make. The Moores assert that collateral estoppel precludes Appellants from again seeking to compel this case to arbitration.[2] The Moores contend that, under the doctrine of collateral estoppel, the trial court's earlier denials of Appellants' motion to compel arbitration precluded them from filing a subsequent motion. Appellants assert in their fourth issue that collateral estoppel is not a bar in this appeal. We agree.

---

[2]The Moores refer to "equitable estoppel" in one portion of their brief. The doctrine of equitable estoppel requires (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991). While the Moores have used the term "equitable estoppel" in some places of their brief, the arguments that are advanced are in the nature of a collateral estoppel contention.

The Texas Supreme Court articulated the standard for collateral estoppel in *Sysco Food Services, Inc. v. Trapnell*:

> A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

890 S.W.2d 796, 801 (Tex. 1994). The doctrine of collateral estoppel does not bar Appellants' motion to compel because the Moores are not relying on a previously entered final judgment. Instead, the Moores are relying on interlocutory trial court rulings. Interlocutory trial court rulings cannot support the application of collateral estoppel because they are not a final judgment. *Mouton v. Christian Faith Missionary Baptist Church*, 498 S.W.3d 143, 152 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We sustain Appellants' fourth issue.

In their second issue, Appellants contend that the trial court abused its discretion by denying their second motion to compel arbitration. Appellants assert that they satisfied their burden to show that the agreement is enforceable under the FAA and that the Moores have failed to prove a defense to the arbitration agreement.

A party seeking to compel arbitration under the FAA must show that the dispute falls within the scope of an arbitration agreement. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) (*Venture Cotton I*). If the party seeking to compel arbitration meets this burden, the burden then shifts to the party opposing arbitration to raise an affirmative defense. *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). Thus, the FAA requires a court to make a threshold determination of arbitrability—that the dispute is subject to an enforceable agreement to arbitrate—before enforcing the arbitration agreement by compelling arbitration or staying litigation. *Id.* "[A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010). We defer to the trial court's factual determinations if they are supported by evidence, but we review legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Whether the claims in dispute are within the scope of a valid arbitration agreement is reviewed de novo. *Id.*

The FAA generally governs arbitration provisions in contracts involving interstate commerce. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); *see* 9 U.S.C. § 2. Appellants assert that their dispute with the Moores involves interstate commerce and falls within the scope of a valid arbitration agreement. They further assert that Oak Creek is a party to the agreement. Conversely, the Moores contend that it "would be a stretch to imagine that this is an event that occurred in interstate commerce."

The Supreme Court held in *Allied-Bruce* that the FAA provision that "makes enforceable a written arbitration provision in a 'contract evidencing a transaction involving commerce'" extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 265 (1995). The contract at issue in *Allied-Bruce* evidenced a transaction involving interstate commerce partly because the parties resided in different states. *See id.* at 282; *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999). As Appellants note, "21st Mortgage is a

8

Delaware corporation with its home office located in Knoxville, Tennessee, and is the current owner of the contract." The Moores were residents of Jones County when they filed this lawsuit. Therefore, under the standard set forth by the Supreme Court in *Allied-Bruce*, this contract involves interstate commerce. *See Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Appellants also assert that the dispute falls within the scope of the arbitration clause. By its terms, the arbitration agreement covers "any and all claims or controversies for liability, damages or expenses arising out of or in connection with the home, the contract, or any warranties, representations, or agreements relating thereto." In light of the agreement's broad language, Appellants have satisfied their burden to show that their dispute with the Moores falls within the scope of the arbitration agreement.

Appellants also contend that the Moores are obligated to arbitrate their claims with Oak Creek even though Oak Creek is not a signatory of the 21st Mortgage arbitration agreement. "The initial burden of the party seeking to compel arbitration—to establish the arbitration agreement's existence—includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006); *see Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

9

The Moores assert that requiring them to arbitrate their case with Oak Creek would violate *In re Merill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007). However, the rule set forth in *Merill Lynch* does not apply to the facts of this case. In *Merill Lynch*, the Texas Supreme Court ruled that an arbitration agreement between a company and investor would not extend to some of the investor's claims against the company's affiliated corporations—because the arbitration agreement did not even refer to the affiliates. *Id.* at 191. The arbitration agreement that the Moores executed with 21st Mortgage stated that it was "entered into for the benefit of not only the parties hereto but also the manufacturer of the home." There is no dispute that Oak Creek is the manufacturer of the home. Thus, by its own terms, the arbitration agreement was entered into, in part, for the direct benefit of the manufacturer. *See Palm Harbor Homes*, 195 S.W.3d at 677. Accordingly, Oak Creek is a party to the 21st Mortgage arbitration agreement and is able to seek its enforcement.

Appellants have satisfied their burden to show that the arbitration agreement is enforceable under the FAA. We sustain Appellants' second issue. Thus, the Moores had the burden to prove one of their defenses to the arbitration agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). Otherwise, the FAA requires arbitration. *Id.* The Moores have asserted that the arbitration agreement is substantively and procedurally unconscionable. Appellants address these defenses in their third issue.

Substantive unconscionability refers to the fairness of the arbitration agreement itself; procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision. *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002). "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the

particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *FirstMerit Bank, N.A.*, 52 S.W.3d at 757; *see Venture Cotton Coop. v. Freeman*, 494 S.W.3d 186, 192 (Tex. App.—Eastland 2015, no pet.) (*Venture Cotton II*). "Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided." *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding); *see Venture Cotton II*, 494 S.W.3d at 192

The Moores raise numerous allegations of substantive unconscionability, including that the agreement (1) requires them to pay excessive fees and costs, which they cannot afford; (2) improperly limits witnesses and evidence that can be produced; and (3) violates their substantive rights under the DTPA. We note that we addressed many of these same issues in *Venture Cotton II*.

The Moores contend that the arbitration agreement is substantively unconscionable because it divides the arbitration fees and costs equally between parties. The arbitration agreement states that "[f]ees and costs of the arbitration will be shared equally by the parties." The Moores assert that they "live from paycheck to paycheck with no disposable income." They further argue in their brief that "the terms of [the arbitration] agreement unreasonably favor" Appellants because they can more easily afford the arbitration costs.

"[E]xcessive costs imposed by an arbitration agreement render a contract unconscionable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010) (orig. proceeding) (citing *Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 90 (2000)). The party that opposes arbitration has the burden of proof. *Id.* It is not sufficient for the party to show that it is at risk of incurring excessive fees

and costs. *Poly–Am.*, 262 S.W.3d at 356 ("the 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement" (alteration in original) (quoting *Green Tree*, 531 U.S. at 91)). The complaining party must present "*some evidence* that [it] will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Id.* (citing *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007); *FirstMerit Bank*, 52 S.W.3d at 756–57)). Such evidence may be shown "through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Olshan*, 328 S.W.3d at 895.

To determine whether an arbitral forum is an adequate substitute to litigation on the basis of costs, we analyze three factors: (1) the claimant's ability to pay the arbitration fees and costs, (2) the expected cost differential between arbitration and litigation and whether that differential is so substantial that it deters the claimant from bringing its claims, and (3) the actual cost of arbitration compared to the total amount of damages that the claimant is seeking. *Id.* at 893–95. "[A] comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id.* at 894–95.

The Moores assert that they cannot afford arbitration and would be paying "substantially more" to arbitrate their case rather than to litigate it in district court. They did not present any evidence of this contention at the hearing on the second motion to compel. In their response to the second motion to compel, the Moores included an affidavit from Brenda Moore to the effect that they "live from paycheck to paycheck with no disposable income" and that they would be unable to pay half the cost of arbitration. *See Anglin*, 842 S.W.2d at 269 (noting that a hearing on a motion to compel arbitration is amenable to proof by affidavit unless controverted).

12

The Moores' attorney argued that arbitration was "economically impossible for these people to perform." However, the Moores provided no evidence of the second and third *Olshan* factors. Accordingly, the Moores have not established that the cost of arbitration renders the agreement substantively unconscionable. *See id.*

The record also indicates that Oak Creek has offered to pay for the Moores' portion of the arbitration fees and costs. Courts have recognized that one party's offer to pay the other party's arbitration costs is a factor weighing against a finding of substantive unconscionability. *See Ensign Grp., Inc. v. Mammen*, No. 02-14-00317-CV, 2015 WL 2266406, at *3 (Tex. App.—Fort Worth May 14, 2015, no pet.); *see also Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 183 n.10 (4th Cir. 2013) ("A party's agreement to pay all arbitration costs . . . 'moots' the issue and foreclose[es] the possibility that [the opposing party] could endure any prohibitive costs in the arbitration process." (alterations in original) (quoting *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003))); *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003) ("[A]ny problem involving whether the plaintiff can afford the cost of arbitration is no problem in light of the defendant's stipulation to pay the plaintiff's costs of arbitration . . . ."); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001). Oak Creek's agreement to pay the Moores' arbitration costs is dispositive of the Moores' complaint about the cost of the arbitration.

The Moores also assert that "[t]he limitations on witnesses and evidence that may be produced . . . [is] a clear violation of the rights of any American citizen to present his or her grievances to even an arbitrator." We look to whether the agreement imposes discovery limitations that would prevent a party from effectively presenting its claims. *Venture Cotton II*, 494 S.W.3d at 195 (citing *Poly–Am.*, 262 S.W.3d at 358). The arbitration agreement states, "Each party in such arbitration

. . . shall be permitted to depose one individual and any expert witness designated by another party." Discovery limitations in an arbitration agreement governed by the FAA do not render the agreement per se substantively unconscionable under Texas law. *Poly–Am.*, 262 S.W.3d at 357–58. The Texas Supreme Court expressed doubt that a trial court could accurately determine if a limit on discovery would have an impermissible effect before arbitration begins. *Id.* at 358. The court concluded that, at this point in the proceedings, "discerning the discovery limitations' potential preclusive effect is largely speculative. The assessment of particular discovery needs in a given case and, in turn, the enforceability of limitations thereon, is a determination . . . best suited to the arbitrator as the case unfolds." *Id.* As was the case in *Poly–America*, the Moores have not demonstrated how the discovery limitation would "unreasonably impede effective prosecution" of their substantive rights. *See id.*

The Moores additionally assert that the arbitration agreement "is illegal" because it requires them to "waive their substantive rights" under the DTPA. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63 (West 2011 & Supp. 2018). The Moores contend that, if they are compelled to arbitrate their claims, they will be required to share the fees and costs equally with Appellants as stated in the agreement. Conversely, the DTPA allows a prevailing party to recover reasonable attorneys' fees and costs. *See id.* § 17.50(d). The Moores argue that the arbitration provision "circumscribes the arbitrator's authority to grant effective relief" and "interferes with substantive rights afforded by the [DTPA]."

An arbitration agreement covering statutory claims is generally invalid if it "waive[s] the substantive rights and remedies the statute affords." *Poly–Am.*, 262 S.W.3d at 349. However, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of

the agreement." *Id.* at 360. The remedies available under the DTPA can be contractually waived. BUS. & COM. § 17.42. Among other requirements, a waiver of any DTPA remedies must be "conspicuous and in bold-face type of at least 10 points in size," identified with a specific heading that indicates a waiver, and provide language substantially similar to the form included in the statute. *Id.* To the extent that the 21st Mortgage arbitration agreement waives remedies available under the DTPA, the waiver does not comply with Section 17.42.

The Texas Supreme Court recently held in *Venture Cotton I* that an implied waiver of a right or remedy under the DTPA contained within an arbitration agreement that does not conform to the statutory requirements is invalid. 435 S.W.3d at 230–31, 234. However, the offending limitation does not wholly invalidate the arbitration agreement. *Id.* Instead, the offending limitation should be severed from the arbitration agreement. *Id.*; *see Venture Cotton II*, 494 S.W.3d at 190–91. As noted by the court in *Venture Cotton I*, a severance of the offending limitation is appropriate on appeal even though a party has not requested it. 435 S.W.3d at 230–31; *see Venture Cotton II*, 494 S.W.3d at 190–91.

The arbitration agreement in this case states: "Each party in such arbitration shall bear their own expenses . . . ." To the extent that this provision may preclude the arbitrator from awarding attorney's fees and costs to the prevailing party, it is invalid. Therefore, we sever it from the arbitration agreement with respect to the relief that the arbitrator may ultimately award. S*ee Venture Cotton II*, 494 S.W.3d at 190–91. However, the arbitration agreement is not rendered wholly invalid because of this provision. *Venture Cotton I*, 435 S.W.3d at 230–31, 234.

The Moores also assert that the arbitration agreement is procedurally unconscionable. The Moores contend that they "are of modest financial resources," that they "lack legal training and experience in negotiating legal documents," and

that there is an "inequality in bargaining power" between them and Appellants. Similarly, they argue that a court can infer a "lack of understanding among one of the contracting parties" because of the "convoluted language" in the agreement. The Moores state in their brief that "at the time of the sale, [they] were just handed a stack of papers and told to sign here with no explanation of what they were signing." They assert that they would not have signed the arbitration agreement if they had understood that they were waiving their right to a trial by judge or jury. They supported these contentions with Brenda Moore's affidavit wherein she stated:

> I never knew that we were agreeing to an Arbitration as the matter was not discussed or disclosed to us at the time of signing all of the documents relating to this transaction, nor were we given any explanation about the effects of any document that we were signing. My husband and I were given a stack of papers and told to "sign here[.]"

"Unconscionability principles are applied to prevent unfair surprise or oppression." *Palm Harbor Homes*, 195 S.W.3d at 679. Absent fraud, misrepresentation, or deceit, a party is bound to the contract he signs—regardless of whether he read it or believed it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding); *Venture Cotton II,* 494 S.W.3d at 199. The grounds for procedural unconscionability must be "sufficiently shocking or gross to compel the court to intercede." *Delfingen US-Tex., L.P. v Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.).

The Texas Supreme Court addressed similar allegations in *Palm Harbor Homes* when the parties resisting arbitration asserted "that they did not voluntarily waive their rights to a jury trial and that they are unsophisticated persons who, if the concept of arbitration had been explained to them, would not have signed the arbitration agreements." 195 S.W.3d at 679. The court held that, even if the trial court found these allegations to be true, they did not establish procedural

unconscionability as to the adoption of the arbitration agreement. *Id.* The court determined that the parties were bound to the arbitration agreement that they signed because there was no allegation of fraud, deceit, or misrepresentation. *Id.* (citing *McKinney*, 167 S.W.3d at 835). The court further noted that a less advantageous bargaining position will not negate an arbitration agreement on the basis of procedural unconscionability. *Id.* (citing *FirstMerit Bank*, 52 S.W.3d at 757). The court concluded by noting that the arbitration agreement was clearly labeled as an arbitration agreement, was relatively short, and contained an express jury trial waiver. *Id.*

The arbitration agreement at issue in this case has many of the same attributes. It is less than a full page in length and is entitled "ARBITRATION AGREEMENT" at the top. It also contains a statement to the effect that a trial by a judge or jury is being waived. Above its signature lines, the arbitration agreement provides: "THIS IS AN IMPORTANT LEGAL DOCUMENT. IF YOU DO NOT UNDERSTAND IT, DO NOT SIGN IT, AND SEEK LEGAL HELP!" There is nothing to indicate unfair surprise or oppression in the agreement. *See id.* Furthermore, there is no evidence that Appellants affirmatively misrepresented the contents of the agreement or that the Moores were prevented by Appellants from reading the agreement. Given the absence of evidence denoting a coercive environment, the Moores are presumed to have read and understood the documents given to them. *See Delfingen*, 407 S.W.3d at 802. Accordingly, the Moores' allegation concerning the execution of the arbitration agreement fails to establish procedural unconscionability. *See Palm Harbor Homes*, 195 S.W.3d at 679.

Based on the evidence in the record and the allegations of the Moores, the arbitration agreement is not substantively or procedurally unconscionable—with the exception of the provision pertaining to the arbitrator's ability to award

attorney's fees and costs, which we are severing from the agreement. With this noted exception, we sustain Appellants' third issue.

*This Court's Ruling*

The portion of the 21st Mortgage arbitration agreement that provides that each party "shall bear their own expenses" is severed from the agreement to the extent that this provision may preclude the arbitrator from awarding attorney's fees and costs to the Moores if they are the prevailing party. We reverse the trial court's order denying Appellants' motion to compel arbitration and remand this cause to the trial court for the court to enter an order in which it compels the parties to arbitration and in which it stays all proceedings in the trial court until the conclusion of such arbitration.


JOHN M. BAILEY
CHIEF JUSTICE


January 10, 2019

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.