**Reverse, Render Order, and Remand; Opinion Filed April 21, 2016.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-15-00964-CV

**BONDED BUILDERS HOME WARRANTY ASSOCIATION OF TEXAS, INC. D/B/A BONDED BUILDERS WARRANTY GROUP, Appellant**

**V.**

**JAMES B. SMITH AND MICHELLE EYRICH, Appellees**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-04117**

## OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Lang

In this interlocutory appeal, appellant Bonded Builders Home Warranty Association of Texas, Inc. d/b/a Bonded Builders Warranty Group ("BBWG") challenges the trial court's denial of its motion to compel arbitration in a lawsuit filed by James B. Smith and Michelle Eyrich ("appellees" or "plaintiffs") based on alleged defects in a home purchased by them.

We decide in favor of BBWG on its sole issue. We reverse the portion of the trial court's order denying BBWG's motion to compel arbitration, order the severing of a portion of the arbitration provision in question and the granting of BBWG's motion to compel arbitration, and remand this case to the trial court for further proceedings consistent with this opinion.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2013, appellees purchased a home from a builder, Regent Custom Homes ("Regent"). In connection with that purchase, appellees obtained an "express limited warranty" (the "Warranty") issued by BBWG. The Warranty documentation set forth "general warranty provisions" applicable here.[1]

On April 10, 2015, appellees filed this lawsuit against Regent[2] and BBWG. In their last-filed petition at the time of the order complained of, appellees contended in part that several months after purchase, they "began to notice serious defects" in their home, including "significant foundation problems." According to appellees, after Regent "refused to assist" them, they made a claim under the Warranty, which claim was rejected by BBWG. Appellees' petition asserted a cause of action against BBWG for breach of contract based on BBWG's

---

[1] Specifically, the general warranty provisions stated, in part, as follows:

C. ARBITRATION PROVISION

In the event any Dispute under any BBWG warranty, including without limitation, a claim of subrogation, negligent or intentional misrepresentation or nondisclosure in the inducement, breach of any alleged duty of good faith and fair dealing, and/or any dispute over the scope of this Arbitration Provision, cannot be resolved by one of the Alternative Dispute Resolution processes described herein, You, the Builder and BBWG agree to submit the Dispute to binding arbitration. You will have the right to select the arbitration company from the list of approved arbitration companies BBWG will provide to You when arbitration is requested. The arbitration will be conducted under the arbitration company's rules in effect at the time of the arbitration.

The decision of the arbitrator shall be final and binding on all parties and may be entered as a judgment in any State or Federal court of competent jurisdiction. **By accepting the warranty, You are agreeing to waive Your right to a trial by either judge or jury in a court of law.**

. . . Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration provision, and the arbitrator shall have sole authority to award such fees and costs.

The arbitrator's compensation fee, administrative fee and all expenses charged by the arbitrator and/or the arbitration service shall be borne equally by the arbitrating parties. Each party shall pay their own attorney fees and expenses. Additional fees may be assessed in accordance with the arbitration company rules and fees. The arbitrator shall have the discretion to reallocate such fees and expenses, save and except attorney's fees, in the interest of justice.

The parties agree that this arbitration provision involves and concerns interstate commerce and is governed by the Federal Arbitration Act . . . to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule . . . .
        . . . .
If any provision of this arbitration agreement shall be determined to be unenforceable by the arbitrator or by the court, the remaining provisions shall be deemed to be severable there from [sic] and enforceable according to their terms.

(emphasis original) (hereinafter, the "arbitration provision").

[2] Regent is not a party to this appeal and the record does not show it has sought to compel arbitration. Appellees' claims against Regent included negligence, gross negligence, breach of express and implied warranties, violations of the Texas Deceptive Trade Practices Act, and breach of contract.

"failing to accept Plaintiffs' valid and enforceable warranty claim." Further, appellees asserted they "are entitled to recover reasonable and necessary attorneys' fees" as a result of BBWG's breach of contract pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015).

BBWG filed a general denial answer. Also, BBWG asserted (1) affirmative defenses in which it contended, in part, that plaintiffs had committed a "material breach" of the Warranty and "failed to satisfy all conditions precedent" because they "failed to comply with the dispute process required by the Warranty" and (2) a claim for "attorney's fees . . . incurred in arbitration and in any litigation prior to or subsequent to arbitration" and "all court and arbitration costs" pursuant to the terms of the Warranty.

Additionally, on July 29, 2015, BBWG filed a "plea in abatement and motion to compel arbitration" in which it sought "an order compelling arbitration and abating all proceedings against all defendants pending an arbitrator's award." Therein, BBWG stated in part (1) "Plaintiffs' claims against BBWG arise exclusively out of the Warranty Document"; (2) "there is no valid defense to enforceability of the arbitration agreement"; and (3) "[a]ccordingly, the Court should compel arbitration and stay the proceedings."

Appellees filed a response to BBWG's plea in abatement and motion to compel arbitration in which they asserted in part that the "entire arbitration clause" in the Warranty is "unconscionable" because (1) it "requires Plaintiffs to ask an arbitrator to award damages against a company that is sending business to the arbitration company"; (2) "the rules that govern the arbitration are unknown until a pre-approved arbitration company is selected, yet Plaintiffs were not given access to those arbitration companies, or to their rules when they presumably agreed to this arbitration clause"; and (3) "to date, Plaintiffs are unable to access the pre-approved

–3–

companies or their rules." Also, appellees argued "[t]his entire arbitration clause is unconscionable, and not capable of bits and pieces being severed."

Further, appellees contended "the unconscionability of this clause is even more evident when it is taken into consideration with other terms in the Warranty that dictate the terms of the arbitration." Specifically, appellees complained of two provisions in the "General Conditions" section of the Warranty that follows the Warranty's arbitration provision described above.[3] Appellees contended those two "General Conditions" (1) improperly "limited Plaintiffs' claims to only those dictated in the Warranty, expressly stating regardless of the law" and (2) attempted to "eliminate" their right to seek reimbursement of their attorney's fees pursuant to the civil practice and remedies code and the Texas Deceptive Trade Practices Act ("DTPA"). According to appellees, the "entire arbitration clause" and the two "additional conditions" in the Warranty that are "not part of the arbitration clause, but [apply] to the arbitration clause," are "grossly one-sided" and "meant to oppress Plaintiffs" and "deter them from bringing claims against the Defendants." In support of those arguments, appellees attached a copy of the Warranty and a printout of a page from BBWG's website respecting "Dispute Resolution." The website page stated in part (1) BBWG offers a "proven resolution process, Conciliation," which is intended to "help all parties reach agreement without the additional cost, time, inconvenience or bad will of legal action," and (2) "[i]n an extreme case, if Conciliation does not facilitate an agreeable and

---

[3] The two "General Conditions" complained of by appellees state as follows:

D. GENERAL CONDITIONS
. . . .
6. Exclusive Remedy Agreement - Except as provided herein, You have waived the right to seek damages or other legal or equitable remedies from the Builder, its principles [sic], his subcontractors, agents, vendors, suppliers, workers, material men, and/or design professionals under any and all causes of action whether statutory or at common law, including but not limited to negligence and/or strict liability. The agreement contained herein shall be enforceable to the fullest extent permissible by the law of the state in which the property is located and shall apply to any claim thereafter made against the Builder or any other person. Your sole remedy, in the event of a defect in Your Home or in the real property upon which it is situated, is as prescribed in the terms and conditions of the BBWG Warranty issued on the Home. Nothing in this paragraph shall effect [sic] or be applicable to any other express written warranty You may have received from any single vendor or manufacturer who has supplied any appliance or component for the Home.
. . . .
9. Attorney's Fees and Costs Forbidden - Each party shall bear its own costs of litigation and under no circumstances shall any party, prevailing or otherwise be entitled to an award and/or judgment which includes or provides for attorney's fees and/or court costs.

–4–

equitable outcome, you and your builder may request arbitration by a professional independent organization."

During the hearing on BBWG's plea in abatement and motion to compel arbitration, appellees restated their arguments described above. Then, counsel for BBWG argued in part (1) appellees' contentions respecting selection of an arbitration company are "premature" because arbitration has not yet been requested by appellees and therefore no list respecting this matter has yet been compiled; (2) the arbitration provision in question allows for "selecting an arbitration company," rather than choosing from "a list of biased and unneutral individual arbitrators," and is therefore distinguishable from the arbitration provisions in the authority relied upon by appellees; (3) pursuant to the severability clause described above, the trial court "could very easily strike" any unenforceable portion of the arbitration provision and uphold the remainder of that provision; and (4) "the Texas Supreme Court has repeatedly stated that issues that go to contractual provisions other than the arbitration provision are to be arbitrated" and are "not even to be discussed or considered for purposes of a Motion to Compel Arbitration." Additionally, the following exchange occurred between the trial court and counsel for BBWG:

> [COUNSEL FOR BBWG]: . . . When we have an arbitration company, such as . . . AAA, for the homeowners to choose from, they then select the arbitration company that they like best. They do that by looking at that company's cost, that company's rules, and making the best determination for them.
>
> THE COURT: That's very generous of you. So if your client decided—and I have some doubts that it would, but if your client decided to put AAA on this list, or select AAA, because it's your right, they would have to proceed under the Commercial Arbitration Rules?
>
> [COUNSEL FOR BBWG]: The warranty states that the arbitration will be conducted under the arbitration company's rules in effect at the time of the arbitration.
>
> THE COURT: So in a case like this where it deals with this subject matter, their filing fee would be about what? $10,000?

[COUNSEL FOR BBWG]: Your Honor, I'm not aware of the exact cost. It would depend on the company that they chose.

THE COURT: So they would—by the time this was over, they would spend easily north of $100,000 to arbitrate this case.[4]

Following the hearing, BBWG's motion was "denied in its entirety" by the trial court. This interlocutory appeal timely followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015); 9 U.S.C. § 16 (2012).

## II. DENIAL OF BBWG'S MOTION TO COMPEL ARBITRATION

### A. Standard of Review

"We review an order denying a motion to compel arbitration under an abuse of discretion standard." *Morford v. Esposito Sec., LLC*, No. 05-14-01223-CV, 2015 WL 5472640, at *4 (Tex. App.—Dallas Sept. 18, 2015, no pet.) (mem. op.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.)). We defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Id.* (citing *Labatt*, 279 S.W.3d at 643; *Sidley*, 327 S.W.3d at 863); *Tex. Health Res. v. Kruse*, No. 05-13-01754-CV, 2014 WL 3408636, at *1 (Tex. App.—Dallas July 11, 2014, pet. denied) (mem. op.). "Whether an arbitration agreement is enforceable is subject to de novo review." *Tex. Health Res.*, 2014 WL 3408636, at *1 (citing *Labatt*, 279 S.W.3d at 643).

### B. Applicable Law

In general, a party seeking to compel arbitration under the Federal Arbitration Act ("FAA") must establish (1) the existence of a valid, enforceable arbitration agreement and

---

[4] The acronym "AAA" is commonly used in arbitration cases to refer to the American Arbitration Association. *See, e.g.*, *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 801 (Tex. App.—Dallas 2008, pet. denied).

(2) that the claims at issue fall within that agreement's scope.[5]  *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 177 (Tex. App.—Dallas 2013, no pet.) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (although there is strong presumption favoring arbitration, that presumption arises only after party seeking to compel arbitration proves valid arbitration agreement exists).  The party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing the otherwise valid arbitration provision.  *Pilot Travel Ctrs*., 416 S.W.3d at 177 (citing *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding)).  A court has no discretion and must compel arbitration if it is established that there is a valid arbitration agreement and the claims raised fall within the scope of that agreement. *See id.*

Section 2 of the FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 891 (Tex. 2010) (orig. proceeding).  Such agreements are enforceable only if they meet the requirements of the general contract law of the applicable state.  *Olshan*, 328 S.W.3d at 891.  When determining whether an agreement to arbitrate is valid, state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.  *Id*. at 891–92.  Texas law renders unconscionable contracts unenforceable.  *Id*. at 892.

---

[5] As described above, the arbitration provision states in part "[t]he parties agree that this arbitration provision involves and concerns interstate commerce and is governed by the Federal Arbitration Act . . . to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule."  The parties do not dispute that the FAA is applicable in this case.

Arbitration agreements may be either substantively or procedurally unconscionable, or both. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (orig. proceeding) ("[C]ourts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision.")). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Id.* (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding)). A party seeking to avoid arbitration on unconscionability grounds bears the burden of proof. *See In re Halliburton*, 80 S.W.3d at 572.

The supreme court has stated that courts "should be wary of setting the bar for holding arbitration clauses unconscionable too low." *Olshan*, 328 S.W.3d at 892. "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Id.* "In applying the unconscionability standard, the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *Id.* at 894. "That inquiry is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (citing *Olshan*, 328 S.W.3d at 896).

### C. Application of Law to Facts

In its sole issue on appeal, BBWG asserts the trial court abused its discretion by denying BBWG's motion to compel arbitration because (1) "BBWG conclusively established that Plaintiffs' claims fall squarely within the scope of a valid, enforceable arbitration agreement"

and (2) "Plaintiffs failed to meet their burden of establishing that the arbitration agreement is unconscionable."

Appellees contend on appeal that BBWG did not prove the existence of a valid agreement to arbitrate because (1) the alleged agreement in question "lacks essential terms rendering it impermissibly vague and invalid"; (2) BBWG's "exclusive right to choose the pool of arbitrators" renders the alleged agreement invalid; and (3) "BBWG's system utterly fails to provide a neutral forum." Additionally, appellees assert that even if this Court concludes there is an agreement to arbitrate, the arbitration provision in question is unconscionable because (1) it "permits [BBWG] to unilaterally select the arbitrator"; (2) it "attempts to limit the statutory rights" of appellees; and (3) there is a "gross disparity" between appellees and BBWG.

### 1. Existence of Valid Agreement to Arbitrate

We begin by considering whether the record shows BBWG conclusively established the existence of a valid agreement to arbitrate.[6] *See Pilot Travel Ctrs.*, 416 S.W.3d at 177. "The arbitration agreement need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed, and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision." *Manes v. Dallas Baptist Coll.*, 638 S.W.2d 143, 145 (Tex. App.—Dallas 1982, writ ref'd n.r.e.); *accord In re Bates*, 177 S.W.3d 419, 422 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) ("Although an arbitration agreement does not have to assume any particular form, the language of the agreement must clearly indicate the intent to arbitrate."). "The essence of arbitration is the submission of the controversy to a third party." *Manes*, 638 S.W.2d at 145; *see also* 9 U.S.C. § 2.

---

[6] Appellees did not assert in the trial court, and do not contend on appeal, that their claims fall outside the scope of the alleged arbitration agreement in question. *See Venture Cotton*, 435 S.W.3d at 228.

As described above, the Warranty contains a written provision stating the parties agree that (1) "any Dispute under any BBWG warranty" that "cannot be resolved by one of the Alternative Dispute Resolution processes described herein" will be submitted to "binding arbitration" and (2) "[t]he decision of the arbitrator shall be final and binding on all parties."

First, we address appellees' contention that the alleged arbitration agreement before us is "not a valid agreement to arbitrate" because it "lacks essential terms." Specifically, according to appellees, (1) it "fails to include material terms such as where the dispute is to be arbitrated, the identity of any arbitration company or the specific arbitrator(s), or the rules and costs of arbitration" and (2) "[a]ll of these missing terms are ones that any reasonable person would consider vitally important to an agreement to have their disputes heard in a forum other than Texas courts." However, appellees cite no authority, and we have found none, to support their position that the terms described by them are "essential" as to an arbitration agreement. *Cf. Goetz v. Goetz*, 130 S.W.3d 359, 362 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("the failure to identify an arbitrator, or even specify a method for choosing one, does not render an arbitration agreement unenforceably incomplete"); 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire . . . .").

Second, appellees argue the alleged agreement to arbitrate is "impermissibly vague" because it "fails to identify any arbitrator, arbitration body, or arbitral rules." In support of that position, appellees cite a case outside this jurisdiction involving international arbitration. *See Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 9–10 (1st Cir. 2006). The agreement at issue in *Marks* stated in part, "Any dispute . . . between the Parties arising out

of or relating to this Agreement which cannot be settled amicably shall be referred to and determined by arbitration in The Hague under the International Arbitration rules." *Id*. at 9. The court in that case concluded the arbitration clause was "poorly drafted" because (1) "the clause does not identify the specific arbitral body at The Hague that would adjudicate any dispute" and (2) "the contract language ("the International Arbitration rules") suggests that a particular set of arbitration rules would govern the dispute; but, as it turns out, there are no rules called the 'International Arbitration rules.'" *Id*. By contrast, the alleged arbitration agreement in the case before us (1) provides a method for selecting an arbitration company, which company's rules will apply to the arbitration, and (2) does not designate particular rules that are known to be nonexistent. We cannot agree with appellees that *Marks* supports their position respecting vagueness.

Next, we address together appellees' remaining two arguments respecting the existence of a "valid agreement to arbitrate." Specifically, appellees contend (1) "[b]ecause the 'agreement' gives BBWG the sole authority to select the arbitrator(s), Appellees are denied the opportunity to select an unbiased arbitrator," and (2) "BBWG's arbitration scheme is an inherently conflicted system, which creates a roadblock to neutrality and impartiality." As to the first of those arguments, appellees assert in part,

> BBWG controls the list of arbitrators from which the arbitrator is selected, having unrestricted and exclusive control of the arbitrator to be "chosen." BBWG does not provide a list of approved arbitrators to the homeowner. BBWG waits until a claim is submitted to select an arbitrator, allowing BBWG to handpick an arbitrator it wants to resolve the dispute. BBWG is free to submit a list of arbitrators who are partial to BBWG. The list could include BBWG's own officers, directors, family members, or arbitrators who regularly receive business from BBWG. BBWG is free to change its list at any time.

However, the arbitration provision does not state that BBWG will provide a "list of arbitrators." Appellees do not explain or address, and the record does not show, how BBWG's providing a list of "approved arbitration companies" from which appellees may choose a

company to conduct the arbitration equates to "unrestricted and exclusive control of the arbitrator to be 'chosen.'" Further, in support of both arguments described above, appellees cite several cases from Texas and other jurisdictions. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605–06 (Tex. App.—El Paso 2005, orig. proceeding) (employer's "problem solving policy" was not arbitration agreement under FAA where procedures provided employer could opt for review by panel composed exclusively of employer's employees); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 493–94 (6th Cir. 2004) (arbitration agreement granting employer exclusive control over pool of individual potential arbitrators from which arbitrator was to be selected was unenforceable); *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302–03 (4th Cir. 2002) (arbitration provision that provided for review by single arbitrator who would be selected from list of arbitrators provided by union with no specified constraints and stated that arbitrator did not have authority to alter or diminish any power of union's president, including termination of an employee, was unenforceable); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (where process allowed for employee's selection of one of three arbitrators on three-person arbitration panel, but provided that all three arbitrators must be selected from list of individual arbitrators created exclusively by Hooters with no restrictions, court concluded Hooters "breached its agreement to arbitrate"); *Raglani v. Ripken Prof'l Baseball*, 939 F. Supp. 2d 517, 523–25 (D. Md. 2013) (arbitration provision that granted employer exclusive control over list of individual arbitrators that may be utilized was unenforceable).

Unlike the case before us, each of the cases cited by appellees involved arbitration provisions that granted employers exclusive control over the pool of individual arbitrators from which employees could select arbitrators. Appellees cite no authority, and we have found none, invalidating an arbitration provision on the ground that it allows one party to provide a list of

arbitration companies from which the other party is to choose a company to conduct the arbitration.

On this record, we conclude BBWG conclusively established the existence of a valid agreement to arbitrate.

### 2. Unconscionability

Now, we address BBWG's assertion that appellees failed to meet their burden to establish the arbitration agreement in question is unconscionable. As to appellees' contention respecting "gross disparity," appellees' entire argument in their appellate brief consists of the following sentence: "There is a gross disparity between Appellees, individual homeowners purchasing a home found almost immediately to have structural issues, and BBWG, a sophisticated commercial bonding company." Appellees do not cite the record or any authority in support of that position. BBWG argues in its reply brief in this Court (1) "Plaintiffs appear to raise a procedural unconscionability argument (i.e., that 'there is a gross disparity between Plaintiffs . . . and BBWG') for the very first time in this appeal" and (2) "[b]ecause this argument was not made to the trial court (and because it is wholly unsupported by evidence), the [trial court] abused its discretion if it based its decision to deny BBWG's Motion to Compel Arbitration on procedural unconscionability grounds."

The record does not show "gross disparity" was asserted by appellees in the trial court. Further, even assuming without deciding that this argument is preserved for appellate review, appellees direct us to no evidence in the record, and we have found none, respecting "gross disparity" between appellees and BBWG. On this record, we conclude the trial court erred to the extent it concluded the arbitration agreement was unconscionable based on "gross disparity."

Additionally, appellees assert the arbitration agreement in question is unconscionable because it "permits [BBWG] to unilaterally select the arbitrator." According to appellees,

(1) "[t]he [arbitration provision] drafted by BBWG is extremely one-sided, designed to create an alternative forum to resolve disputes that has no semblance of neutrality"; (2) "[t]he fact that [BBWG] controls the pool of potential arbitrators taints the arbitration process because the dispute will not be resolved by an impartial third person chosen by the parties"; (3) "the contract and the facts solidly support the concept that BBWG's intention is to control every aspect of the 'dispute resolution' process"; and (4) "[t]he trial judge also noted that the filing fee for an AAA arbitration would be in the $10,000 range, and that 'by the time it was over' Plaintiffs/Appellees 'would easily spend north of $100,000 to arbitrate the case.'"

BBWG argues (1) "Plaintiffs have never requested arbitration in this case, so a list of arbitration companies has not been formally provided by BBWG"; (2) "[a]ny argument that the arbitration companies to be approved by BBWG are biased is therefore premature and wholly unsupported by evidence"; (3) "[b]ecause Plaintiffs have the power to choose the arbitration company, they have the ability to select the rules they like best from the list of arbitration companies provided by BBWG"; and (4) "[t]here is no evidence that the cost of arbitration would be prohibitively expensive."

As described above, the supreme court has stated that an inquiry respecting unconscionability "is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton*, 435 S.W.3d at 232. On subsequent remand in *Venture Cotton*, the Eleventh District Court of Appeals in Eastland considered the substantive unconscionability of an arbitration agreement between a group of cotton farmers (the "farmers") and a cotton cooperative marketing association ("Venture") managed by Noble Americas Corp. ("Noble"). *Venture Cotton Coop. v. Freeman*, No. 11-11-00093-CV, 2015 WL 1967251, at *6 (Tex. App.—Eastland Apr. 30, 2015, no pet.) (hereinafter *Venture Cotton II*). The agreement in

that case provided that arbitration would be conducted by the American Cotton Shippers Association ("ACSA") pursuant to ACSA rules. *Id*. at *1.

The farmers contended in part that a conflict of interest existed between appellants Venture and Noble, collectively, and the ACSA because the manager of Noble was also on the ACSA's board of directors. *Id*. at *6. The court of appeals observed (1) the ACSA executive vice president and president have active roles in the selection process in that the executive vice president selects the three arbitrators to hear a case and the president approves the selection and (2) arbitrators are "selected from the [ACSA] membership, retired members, or from a roster of qualified arbitrators approved by the Board of Directors." *Id*. The court of appeals stated it was thus possible that "the arbitrators that are selected by the executive vice president to hear this case will come from a list of arbitrators that Noble's manager, as one of the directors on the board, approved." *Id*. However, the court of appeals observed, the ACSA rules provide (1) "[t]o qualify as an arbitrator, a member should be commercially disinterested with respect to the particular dispute intended to be presented to him for judgment"; (2) a selected arbitrator must disclose "any circumstances likely to affect his or her impartiality, including any bias or any financial or personal interest in the result of the arbitration"; (3) such arbitrator shall be replaced if either party requests replacement; (4) "either party to the case may challenge the appointment of [an arbitrator] for prejudicial or other causes"; and (5) if a challenge is determined to be valid, the executive vice president is to replace the arbitrator. *Id*. Further, the court of appeals stated that the parties may challenge the appointment of an arbitrator in an appeal of the initial award pursuant to the FAA. *Id*. Then, that court reasoned as follows:

> [The farmers] argue that their ability to object to appointed arbitrators is a "hollow and worthless right because disqualification simply leads to an endless procession of ACSA cotton merchant members" who will "benefit from arbitration rulings that favor member cotton merchants in disputes with non-member cotton producers." [The farmers] do not argue whether unbiased

–15–

arbitrators can, in general, be found. Instead, they argue whether, under the rules in this case, unbiased arbitrators will be found. . . .

While it is possible that the arbitral forum will be biased because one of the Appellants serves on the board of directors for the ACSA and because he or she might play a role in approving a biased arbitrator that is not replaced upon request, it is simply that—a mere possibility. Until [the farmers] are denied access to unbiased arbitrators, it would be a matter of pure speculation to find that there is a conflict of interest that will not be resolved.

*Id*. at *7.

The court of appeals stated in part that because the farmers failed to present evidence that the ACSA will in fact provide biased arbitrators to hear the farmers' case, the farmers had failed to show that the rules in question prevent them from effectively vindicating their rights in the arbitral forum. *Id*. Therefore, that court concluded, the farmers' argument that the arbitral forum will be biased did not support the trial court's determination that the arbitration agreement was unconscionable. *Id*.

In the case before us, the arbitration provision states in part that (1) when arbitration is requested, BBWG will provide a "list of approved arbitration companies" from which the requestor may select a company to conduct the arbitration and (2) the arbitration will be conducted under the arbitration company's rules in effect at the time of the arbitration. The record shows arbitration has not been requested and no list of approved arbitration companies has been provided. Thus, the possibility of unresolved bias or partiality respecting the selection of an arbitrator under the rules that will apply in this case is "a matter of pure speculation." *See id*.; *see also Venture Cotton*, 435 S.W.3d at 232.

Further, to the extent appellees' argument can be construed to assert that the record supports a conclusion that arbitration under the parties' agreement is unconscionable based on prohibitive cost, we cannot agree with that position. "[E]xcessive costs imposed by an arbitration agreement render a contract unconscionable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum." *Olshan*, 328 S.W.3d at 893 (citing

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). However, "[e]vidence of the 'risk' of possible costs of arbitration is insufficient evidence of the prohibitive cost of the arbitration forum." *Id*. at 895. Rather, both the United States Supreme Court and the Texas Supreme Court require "specific evidence that a party will actually be charged excessive arbitration fees." *Id*. The party opposing arbitration must show the likelihood of incurring such costs in his particular case. *Id*. While claimants are not required to actually incur the cost of arbitration before they can show its excessiveness, "parties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id*. "Evidence that merely speculates about the risk of possible cost is insufficient." *Id*. In the case before us, appellees' argument in their appellate brief includes the trial judge's statements described above respecting costs. However, appellees cite no evidence in the record, and we have found none, showing appellees "will actually be charged excessive arbitration fees." *See id*.

Finally, appellees assert "[t]he arbitration agreement is also unconscionable because BBWG's warranty deprives Appellees of substantive rights." Specifically, appellees complain as to the following portion of the arbitration provision:

> Each party shall pay their own attorney fees and expenses. Additional fees may be assessed in accordance with the arbitration company rules and fees. The arbitrator shall have the discretion to reallocate such fees and expenses, save and except attorney's fees, in the interest of justice.

According to appellees, (1) "[t]he above provision in the arbitration clause is unconscionable and unenforceable because it attempts to limit the statutory rights of Plaintiffs and other consumers" and "[i]t eliminates any cause of action Appellees would otherwise have" and (2) "the agreement deprives Appellees from recovering damages and attorney's fees otherwise available to them under the DTPA."

–17–

Additionally, appellees contend "[t]he arbitration clause is unconscionable because it requires each party to bear its own costs of litigation, and 'under no circumstances shall any party, prevailing or otherwise, be entitled to an award and/or judgment which includes or provides for attorney's fees and/or court costs.'"  According to appellees, "[t]he provision compels Appellees to waive rights afforded by statutes, including Chapter 38 of the Texas Civil Practice & Remedies Code, which allows recovery of attorney fees for, among other things, breach of contract and their rights under the DTPA."  In support of those arguments, appellees cite generally to *Venture Cotton* and assert that in that case, the supreme court "concluded that a similar arbitration clause's waiver of remedies under the DTPA was unenforceable because it did not satisfy the DTPA's requirements for a waiver of claims under the Act."

BBWG contends (1) "defenses against the overall agreement itself (i.e., the BBWG Warranty), such as whether the agreement impermissibly disclaims certain rights and remedies, must be arbitrated," and (2) because the arbitration provision provides for severability of any portion of that provision "determined to be unenforceable by the arbitrator or by the court," a determination by the trial court that the provision limiting attorney's fees was impermissible "would be an insufficient basis for denying BBWG's right to compel arbitration."

An arbitration agreement covering statutory claims is generally invalid if it "waive[s] substantive rights and remedies the statute affords." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (orig. proceeding).  However, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Id*. at 360.  "Whether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself."

*Id*. "The relevant inquiry is whether or not parties would have entered into the agreement absent the unenforceable provisions." *Id*.

Additionally, "when the parties have contracted for arbitration of their disputes, a trial court 'may consider only issues relating to the making and performance of the agreement to arbitrate.'" *Olshan*, 328 S.W.3d at 898 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Venture Cotton*, 435 S.W.3d at 232 & n.6 ("Questions of waiver, illegality, remedies, and attorney's fees often relate to the broader, container contract, rather than the separable agreement to arbitrate, and, as such, are matters entrusted to the arbitrators."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding) (stating that plaintiffs' defenses of unconscionability, duress, fraudulent inducement, and revocation "must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration"). "[W]hen authority over the matter is unclear, a strong federal presumption favors arbitration." *Venture Cotton*, 435 S.W.3d at 232 (citing *Poly-Am.*, 262 S.W.3d at 348).

Further, the DTPA provides in part that consumers prevailing in an action pursuant to that act "shall be awarded" their attorney's fees. TEX. BUS. & COM. CODE ANN. § 17.50 (West 2011). Although certain DTPA remedies can be contractually waived, such waiver must be "conspicuous and in bold-face type of at least 10 points in size"; "identified by the heading 'Waiver of Consumer Rights,' or words of similar meaning"; and include language substantially similar to the form the statute provides. *Id*. § 17.42. Also, section 38.001 of the Texas Civil Practice and Remedies Code provides for recovery of attorney's fees by a claimant prevailing in a breach of contract action. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

To the extent appellees' appellate argument can be construed to complain of the "General Conditions" provisions in the Warranty described above, those provisions are not within or specifically referenced by the arbitration provision. Further, the case cited by appellees in support of their position, *Venture Cotton*, involved a complaint as to a provision in the set of arbitration rules specifically designated in the arbitration provision in that case, rather than a complaint respecting a different section of the parties' contract. *See* 435 S.W.3d at 226, 229. Appellees do not explain, and the record does not show, how complaints as to the Warranty's "General Conditions" constitute a challenge to the arbitration clause itself. *See id*. at 232. On this record, we conclude appellees' complaints respecting provisions in the Warranty's "General Conditions" are matters to be entrusted to the arbitrators. *See id.*; *Olshan*, 328 S.W.3d at 898.

As to appellees' complaints respecting the portions of the arbitration provision that state "[e]ach party shall pay their own attorney fees and expenses" and "[t]he arbitrator shall have the discretion to reallocate such fees and expenses, save and except attorney's fees," the claims in this case include breach of contract and DTPA claims asserted by appellees pursuant to statutes that provide for recovery of attorney's fees by prevailing claimants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; TEX. BUS. & COM. CODE ANN. § 17.50. The record does not show appellees have waived the rights afforded by statute respecting recovery of attorney's fees as to those claims. *See Venture Cotton II*, 2015 WL 1967251, at *2 (concluding alleged waivers of statutory rights in arbitration agreement were not specific enough to be effective); *see also* TEX. BUS. & COM. CODE ANN. § 17.42. On this record, we agree with appellees' position that those portions of the arbitration agreement are invalid. *See Venture Cotton*, 435 S.W.3d at 230 (provision that arbitration would proceed under ACSA rule that eliminated rights otherwise available under DTPA was invalid where record did not show compliance with DTPA waiver requirements); *Venture Cotton II*, 2015 WL 1967251, at *2.

–20–

However, as described above, the arbitration provision states in part that "[i]f any provision of this arbitration agreement shall be determined to be unenforceable by the arbitrator or by the court, the remaining provisions shall be deemed to be severable there from [sic] and enforceable according to their terms." According to BBWG, "[t]he parties' intent is thus clear: any provisions held unenforceable should be severed out to permit arbitration of claims to proceed as intended." Appellees do not specifically address severability in their appellate brief.

As described above, in determining an agreement's essential purpose, "[t]he relevant inquiry is whether or not parties would have entered into the agreement absent the unenforceable provisions." *Poly-Am*, 262 S.W.3d at 360. The record shows the arbitration provision's essential purpose was to provide for expedient and efficient resolution of disputes without resorting to legal action. *See Venture Cotton*, 435 S.W.3d at 230. Further, nothing in the record shows the arbitration provision's effect on statutory rights and remedies was more than a "peripheral concern" to the essential purpose. *See id*. On this record, we conclude the trial court erred by declining to sever the arbitration provision's objectionable limitation on appellees' statutory rights respecting recovery of attorney's fees and proceed with enforcement of the remaining provisions. *See id*.; *see also Venture Cotton II*, 2015 WL 1967251, at *2, *10 (severing provision of arbitration agreement that limited statutory rights as to attorney's fees).

We decide in favor of BBWG on its issue.[7]

---

[7] BBWG's prayer for relief in its appellate brief requests that this Court not only reverse the denial of BBWG's motion to compel, but also reverse the denial of its plea in abatement and "abate" this "cause" pending an arbitration award. Section 3 of the FAA provides in part that when a court is satisfied that an issue involved in a suit is properly referable to arbitration, that court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Further, section 16 of the FAA allows for interlocutory appeal from an order "refusing a stay of any action under section 3 of this title," as well as from an order "denying a petition . . . to order arbitration to proceed." *See id*. § 16(a)(1)(A)–(B). However, BBWG's appellate issue, appellate argument, and notice of appeal complain only as to the denial of its motion to compel arbitration and do not mention or address "abatement" or stay of this case or cite any applicable authority. On this record, we conclude BBWG's complaint respecting denial of its plea in abatement presents nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i); *cf. Metro. Life Ins. Co. v. Lindsay*, 920 S.W.2d 720, 726 & n.7 (Tex. App.—Houston [1st Dist.] 1996, no writ) (reversing denial of motion to compel arbitration pursuant to FAA and stating that although record did not support appellant's contention that trial court also abused its discretion by refusing to stay litigation among non-arbitrating parties pending outcome of arbitration, "nothing in this opinion" prohibits trial court from reconsidering stay on remand).

–21–

## III. CONCLUSION

We decide BBWG's sole issue in its favor. We reverse the portion of the trial court's order denying BBWG's motion to compel arbitration; order (1) the severing of the arbitration provision's limitation on appellees' statutory rights as to recovery of attorney's fees and (2) the granting of BBWG's motion to compel arbitration; and remand this case to the trial court for further proceedings consistent with this opinion.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

150964F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BONDED BUILDERS HOME
WARRANTY ASSOCIATION OF TEXAS,
INC. D/B/A BONDED BUILDERS
WARRANTY GROUP, Appellant

No. 05-15-00964-CV        V.

JAMES B. SMITH AND MICHELLE
EYRICH, Appellees

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-04117.
Opinion delivered by Justice Lang, Justices
Evans and Whitehill participating.

In accordance with this Court's opinion of this date, we **REVERSE** the portion of the trial court's order denying appellant Bonded Builders Home Warranty Association of Texas, Inc. d/b/a Bonded Builders Warranty Group's motion to compel arbitration; **ORDER** (1) the severing of the arbitration provision's limitation on appellees James B. Smith and Michelle Eyrich's statutory rights as to recovery of attorney's fees and (2) the granting of appellant Bonded Builders Home Warranty Association of Texas, Inc. d/b/a Bonded Builders Warranty Group's motion to compel arbitration; and **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Bonded Builders Home Warranty Association of Texas, Inc. d/b/a Bonded Builders Warranty Group recover its costs of this appeal from appellees James B. Smith and Michelle Eyrich.

Judgment entered this 21st day of April, 2016.